Case 7:22-cr-00640-KMK    Document 31    Filed 12/07/22    Page 1 of 12

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

MEMO ENDORSED

*United States Attorney's Office*
*50 Main Street, Suite 1100*
*White Plains, New York 10606*

December 6, 2022

**BY ECF AND EMAIL**
The Honorable Kenneth M. Karas
United States District Judge
Southern District of New York
United States Courthouse
300 Quarropas Street
White Plains, New York 10601

  Re: *United States v. Kristopher Burgess Cunningham*, 22 Cr. 640 (KMK)

Dear Judge Karas:

  The Government respectfully submits this letter in support of its appeal from the order by the Honorable Judith C. McCarthy, United States Magistrate Judge for the Southern District of New York, to release defendant Kristopher Burgess Cunningham, a/k/a "KG," on bail pending trial in the above-referenced case (the "Order"). For the reasons set forth below, Cunningham should be detained pending trial. If the Court is unable to hold a detention hearing prior to December 8, 2022, the Government respectfully requests that the Court stay Judge McCarthy's order releasing the defendant pending this appeal.

### I. Background

  The Indictment charges Cunningham with participating in a racketeering conspiracy, participating in a narcotics conspiracy, and possessing a firearm in furtherance of the narcotics conspiracy, and aiding and abetting the same. As laid out in the Government's December 1, 2022, Detention Letter (attached here as Exhibit A), YG is a violent street gang with a presence throughout New York State, and Cunningham was a senior member of the gang. As charged in the Indictment, during Cunningham's time as a senior YG member, the gang was responsible for several shootings, robberies, and assaults, copious amounts of open-air drug trafficking, and extensive fraud.

  Cunningham was arrested on November 30, 2022, and presented and arraigned before Judge McCarthy on December 1, 2022. Judge McCarthy also held a detention hearing in which she ordered Cunningham released to home detention enforced by location monitoring as directed by Pretrial Services and an unsecured

Case 7:22-cr-00640-KMK Document 30 Filed 12/06/22 Page 2 of 12
Case 7:22-cr-00640-KMK Document 31 Filed 12/07/22 Page 2 of 12

Page 2

bond of $100,000 to be co-signed by two financially responsible persons. Judge McCarthy ordered Cunningham to abide by the following conditions, among others: submit to supervision as directed by Pretrial Services; surrender any passport to Pretrial Services and do not submit new applications for the same; avoid all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution, including co-defendants; do not possess a firearm, destructive device, or other weapon; and do not unlawfully possess any controlled substances. Judge McCarthy additionally ordered Cunningham detained until all conditions were met and gave Cunningham until December 8, 2022, to satisfy all conditions and recognized that the week would give the Government time to appeal her decision.

In the approximately five days that Cunningham and his co-defendants have been detained at the Metropolitan Detention Center ("MDC"), they have obtained access to a contraband cellphone as evidenced by a December 5, 2022 video that Bashir Mallory, a/k/a "BG," a/k/a "Bear," posted to his social media account. Screenshots of that video are included below:

 

Case 7:22-cr-00640-KMK  Document 30  Filed 12/06/22  Page 3 of 12

The video shows Cunningham, Mallory, and two others in what appears to be a jail cell in MDC with the caption: "Free all of us [prayer hand emoji]."

## II. Applicable Law

Under 18 U.S.C. § 3145(a), the district court may review *de novo* a magistrate judge's order to release a defendant pending trial. *See United States v. Leon*, 766 F.3d 77, 80 (2d Cir. 1985).

Because the Indictment charges the defendant with a drug trafficking offense for which the maximum term of imprisonment is ten years or more and possession of a firearm in connection with that offense, the court must presume that "no condition or combination of conditions will reasonably assure the appearance of the person and the safety of the community." 18 U.S.C. § 3142(e)(3)(A). The "defendant bears a limited burden of production – not a burden of persuasion – to rebut [that] presumption." *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001).

Even if the defendant is able to rebut the presumption, "the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the . . . court." *Id.* Those factors include: (1) the nature and circumstances of the crime charged (including whether the offense is a crime of violence or involves a firearm); (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including criminal history, community ties, past conduct, and record concerning appearance at court proceedings; and (4) the nature and seriousness of the danger to the community or to an individual. *See* 18 U.S.C. § 3142(g).

The Court must order detention where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). The Court "does not need to find both bases are proven in order to order a defendant's detention," as a finding of either dangerousness or risk of flight may justify remand. *United States v. Epstein*, 425 F. Supp. 3d 306, 312 (S.D.N.Y. 2019). The Government must show "by clear and convincing evidence that the defendant presents a danger to the community and by the lesser standard of a preponderance of the evidence that the defendant presents a risk of flight." *United States v. English*, 629 F.3d 311, 319 (2d Cir. 2011) (internal quotation marks omitted).

Finally, the Government may meet its burden "by proffer alone." *United States v. LaFontaine*, 210 F.3d 125, 131 (2d Cir. 2000) (internal quotation marks omitted). "[B]ail hearings are typically informal affairs, not substitutes for trial or discovery,"

Case 7:22-cr-00640-KMK Document 30 Filed 12/06/22 Page 4 of 12
Case 7:22-cr-00640-KMK Document 31 Filed 12/07/22 Page 4 of 12

Page 4

and so "courts often base detention decisions on hearsay evidence." *United States v. Abuhamra*, 389 F.3d 309, 321 n.7 (2d Cir. 2004) (internal quotation marks omitted).

### III. Cunningham is a Danger to the Community and a Flight Risk

The Government respectfully submits that Cunningham cannot overcome the rebuttable presumption that no conditions will reasonably assure the safety of the community or Cunningham's appearance because all the Section 3142(g) factors weigh in favor of detention.

#### A. Offense Conduct

The conduct with which Cunningham is charged is very serious and concerning, and it underscores the danger posed if he were released pending trial.

#### 1. Racketeering and Enticement to Violence

Cunningham, 28, is the oldest defendant charged in the Indictment and a senior member of YG. He is charged with, among other things, participating in YG's violent racketeering conspiracy.

One of the principal—and most pernicious—roles Cunningham and other YG senior members play in the gang is to encourage and entice young YG members to engage in acts of violence against rival gang members and drug dealers. Cunningham and his fellow senior YG members achieve this principally by promoting and celebrating graphic violence in broad YG group chats. For example, on or about June 21, 2022, a key YG member, Mallory, sent two gruesome videos to a 29-member YG group chat that included both senior gang members like Cunningham and Kashad Sampson, a/k/a "Shoca," and several junior gang members—younger than eighteen. The first video Mallory sent depicts an attacker shooting a victim multiple times at point-blank range in a convenience store and then pistol-whipping the victim twice while he laid helpless on the floor. In response to Mallory sending this video, Cunningham wrote to the same YG group: "You see him hit him walk away n double back." The second video Mallory sent, which has a time stamp of May 26, 2022, depicts two individuals on a street corner. At one point, one of the individuals grabs a gun from a car and approaches the other individual, who sits down on a step. The individual who grabbed the gun then hits the sitting individual with the firearm and then executes him by shooting him at point blank range. In response to Mallory sending this video, Sampson asked the group if the assailant used an "AR" (a reference to an assault weapon). Mallory responded that it was probably a shotgun, and Cunningham responded that it was more specifically a "12 gauge jawn" (a reference to a 12-gauge shotgun).

Case 7:22-cr-00640-KMK  Document 30  Filed 12/06/22  Page 5 of 12
Case 7:22-cr-00640-KMK  Document 31  Filed 12/07/22  Page 5 of 12

Page 5

More recently, in or about August or September 2022, Cunningham took to another YG group chat containing senior and junior gang members (again, including members younger than eighteen) to celebrate the homicide of a rival gang member known as ▮▮▮▮▮▮▮▮. After learning of this murder, Cunningham ("KG" or "K" in the below) expressed to the senior and junior members of YG that he is "proud" of the shooter, and he mocked the victim's murder by creating a graphic of a gun firing at a bucket:



Cunningham has used the same YG group chat to go even further, specifically directing YG members to commit specific acts of violence. For example, in or about

August or September 2022, Cunningham stated that members of YG should rob someone to make money:



Cunningham and other senior members of YG know that the callous disregard for life and glorification of violence displayed by these group chats are not idle words. Similar discussions of violence among senior gang members in past YG group chats have resulted in real-life shootings committed by junior YG members seeking to increase their position in the enterprise. For example, as charged in Count Six of the Indictment, on or about November 17, 2021, Sampson, Jasiah Wooten, a/k/a "Hov," Bruce Allen, a/k/a "Bam," and George Delgado, a/k/a "Groc," participated in similar YG chats exhorting young gang members to commit acts of violence against a rival

gang in retaliation for a fight in a Newburgh high school between a young YG member and his classmate:



Shortly after these messages were sent, junior YG members confronted members of the rival gang, starting fist fights in the street. The fight escalated quickly—when a rival gang member appeared to pull out a firearm, one of the YG members pulled out his own gun and exchanged several shots with the rival gang. This shootout occurred in broad daylight at approximately 3:30 p.m. near a school bus filled with children, and it resulted in four rival gang members' sustaining gunshot wounds.

But as demonstrated by the screenshots above, this school bus shootout apparently did not deter Cunningham and other senior YG members, who continued

to encourage further gang violence through nearly the date of their arrests. There are several young YG members still in the community likely still willing to do the bidding of those YG members awaiting trial in this case. Releasing the eldest such member—Cunningham—back into that community would present an active threat that no combination of conditions could protect against.

### 2. Narcotics Distribution

Cunningham, together with other YG members, also trafficked narcotics that netted the YG enterprise a fair amount of money. In text messages with YG groups, Cunningham talked about the sale of Percocet pills, discussed traveling with Mallory (who is 19) to pick up Promethazine HCL and Codeine, commonly referred to as "lean," and discussed with Gabriel Roman, a/k/a "Gabe," "lines" and "wock," which law enforcement knows also to be references to "lean." As described in the Government's December 1, 2022, detention memorandum, the YG narcotics conspiracy in which Cunningham participated caused both direct and indirect harms to the community: It resulted in the circulation of substantial amounts of dangerous substances throughout Newburgh, and it led to YG members' robbing, assaulting, and shooting at rival drug dealers to maintain control over distribution territory. *See* Ex. A, at 7.

### B. The Weight of the Evidence

The evidence against Cunningham is overwhelming. It includes, among other things, extractions of cellphones seized from multiple members of YG, including Roman, Mekhi McDonald, a/k/a "Khi," and Christopher Tate, a/k/a "Bag." Through these extractions, law enforcement officers have reviewed thousands of text and audio messages sent between members of YG and others. As described above, in group chats involving only YG members, Cunningham and his co-defendants have discussed acts of violence YG members have participated in, promoted, and encouraged, as well as their narcotics trafficking and fraud schemes. Cunningham is an active participant in these group chats and, thus, the racketeering conspiracy. In addition, for all defendants, law enforcement obtained direct evidence of the charged crimes through review of dozens of social media accounts, surveillance video, witness interviews, and post-arrest interviews. In other words, the evidence in this case is, in large measure, made up of Cunningham's own words, writings, and recorded criminal acts.

### C. Cunningham's History and Characteristics

Cunningham's criminal history and record under supervision demonstrates the likely inefficacy of any conditions of release. Cunningham has a prior conviction for a controlled substance offense and a prior conviction for criminal mischief. Cunningham's probation in connection with his 2019 criminal mischief conviction

was revoked, and he was on probation in connection with the 2018 controlled substance conviction while he engaged in the instant conduct, including his participation in the racketeering and narcotics conspiracies. His history and characteristics therefore cast substantial doubt on whether Cunningham could be trusted to comply with the terms of his release from this Court.

### D. Danger to the Community

In addition to the incitement to violence, narcotics distribution, and fraud described above, the government's investigation has revealed that Cunningham has access to firearms and thus poses a substantial risk of danger to the community if released. For example, in a group FaceTime call with other members of YG in or about October 2020—when Cunningham was on probation—Cunningham and others can be seen pointing firearms at the camera (Cunningham is circled in red):



In addition, in or about June 2022, Cunningham participated in a YG group chat in which the members discussed the sale of a firearm with a "switch" that would convert a firearm from semi-automatic to automatic. During that conversation, Cunningham wrote to the group: "Bro I can read 😂😂😂 I see what you asking lol we to fucking old to not no not to text shit like this but to each it's own ███ 🫡." Cunningham's response shows that he was aware of the conversations regarding the sale of the firearm, and that he was aware that YG members should not have discussion about firearms and potential crimes in the group chat.

### E. Risk of Flight

Cunningham is a risk of flight, as he faces a mandatory minimum sentence of 15 years in prison and a statutory maximum of life in a case that, as described above, is supported by powerful evidence, including Cunningham's own statements. That creates a strong incentive to flee. *See United States v. Williams*, 654 F. App'x 3, 4 (2d Cir. 2016) (summary order) (affirming district court order of detention where the district court found, among other things, "the strength of the evidence against [the defendant] coupled with the significant sentence [the defendant] potentially faced," and "extensive criminal history, parole violations, and engagement in criminal activity while under court-ordered supervision," created a risk of flight); *United States v. Green*, No. 20 CR 357 (VM), 2020 WL 5814191, at *1 (S.D.N.Y. Sept. 30, 2020) ("The Government's evidence is strong, and, if convicted, Green faces a significant sentence, which gives him an incentive to flee."). Moreover, Cunningham has a history of noncompliance with court orders and continued the criminal activity charged in the Indictment while on parole. Put simply, there is a pattern of non-compliance with and disrespect for judicial directives, and there is no reason to think that this pattern will let up if Cunningham is released now.

### IV. The Defendant's Bail Package Does Not Eliminate the Danger to the Community or the Risk of Flight

The Government anticipates that Cunningham will propose a bail package similar to the one that was presented to Judge McCarthy during the December 1, 2022, bail hearing. The crux of that package is home detention and electronic monitoring—two components that would have limited efficacy in preventing further criminal activity or flight. "Home detention and electronic monitoring" largely operate on the "word" of the defendant that he will be compliant. *United States v. Millan*, 4 F.3d 1038, 1049 (2d Cir. 1993) (internal quotation marks omitted). "[E]lectronic surveillance systems can be circumvented by the wonders of science and of sophisticated electronic technology, and . . . monitoring equipment can be rendered inoperative." *United States v. Orena*, 986 F.2d 628, 632 (2d Cir. 1993) (internal quotation marks omitted). As Judge Rakoff noted recently, "home confinement, while

important, is not enough to prevent someone who is inclined to commit serious criminal acts from continuing down that path." Bond Hearing Tr., at 28, *United States v. Rivera*, 20 Cr. 6 (S.D.N.Y. Mar. 25, 2020). That is particularly true here, where Cunningham has a record of using his cellphone to encourage remotely young YG members to engage in gang violence.

The other piece of Cunningham's bail package is an unsecured bond. That does nothing meaningful to assure the safety of the community. And in any case, it is an imperfect measure to assure Cunningham's presence in court. The money that others are willing to put up does not outweigh an incentive for a defendant to flee. The bond simply sets up an easy trade for the defendant: his freedom—and an escape from a long period of incarceration—for the money and property of others. That trade is similar to ones other defendants have made. *See, e.g.*, Bail Forfeiture Order, *United States v. Ceglia*, 12 Cr. 876 (S.D.N.Y. March 24, 2015), ECF No. 160 (bail forfeiture order entered on a $250,000 bond, secured by four properties and signed by three family members, after defendant cut monitoring bracelet and fled). The defendant's words and deeds inspire no confidence that any proposed bail package is workable. There is nothing to stop the defendant from continuing to traffic narcotics or encourage acts of violence—as he has done repeatedly in the past—while bailed. This is especially so given that the defendant recently disrespected judicial supervision to commit the instant offense.

[Continued on next page]

## V. Conclusion

The above-proffered evidence is certainly not all of the Government's evidence against the defendant, as a bail hearing is not a "mini-trial" or a "discovery tool for the defendant." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986). But even this should dispel the notion that the defendant can overcome the presumption of detention in this case or can be released on conditions that would reasonably assure his appearance or the safety of the community. Given the nature of the offense and the defendant's track record while under the trust of parole supervision, there is no reason to believe he will not continue to pose a danger or be a flight risk if released now. The Government therefore respectfully submits that the defendant should be detained pending trial.

Judge McCarthy's bail order is stayed until 12/9/22 on which day the Court will hold a hearing at  10:30

So Ordered.

*[signature]*

12/6/22

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney
Southern District of New York

By: ____/s/_____
Jennifer N. Ong/Ryan W. Allison/
Nicholas S. Bradley
Assistant United States Attorneys
(914) 993-1926/ -1953/ (212)-637-1581

X
cc:    Christine Delince, Esq. (by ECF and Email)